UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES EUSSE, JR., <br><br> Plaintiff, <br> v. <br><br> MICHELLE WHITMAN; G.J. JANDA; MARCO VITELA; MARTIN CARPIO; EVARISTO DUARTE; and, ROGER N. NELSON, JR., <br><br> Defendants. | Civil No. 13cv0916-BEN (NLS) <br><br> **REPORT AND RECOMMENDATION TO GRANT DEFENDANT'S MOTION TO DISMISS PORTIONS OF THE SECOND AMENDED COMPLAINT** <br><br> [Doc. No. 26] |

     James Eusse, Jr. ("Plaintiff") is a California prisoner proceeding *pro se* and *in forma pauperis*. On April 16, 2013, he filed a civil rights complaint under 42 U.S.C. § 1983. On September 3, 2013, Plaintiff filed a First Amended Complaint. On July 25, 2014, Plaintiff filed a Second Amended Complaint ("SAC"), which is the operative complaint in the case. [Doc. No. 25.] In the SAC, Plaintiff alleges that Michelle Whitman, G.J. Janda, Marco Vitela, Martin Carpio, Evaristo Duarte, and Roger N. Nelson, Jr. ("Defendants") violated his First Amendment, Eighth Amendment, and Fourteenth Amendment rights. The alleged violations arise out of Plaintiff's placement in the administrative segregation unit ("ad-seg"), various inmate complaints Plaintiff filed, and circumstances leading to charges against Plaintiff for possession of an inmate manufactured weapon. Defendants have filed a motion to dismiss portions of the SAC for failure to state a claim. For the following reasons, the Court **RECOMMENDS** that the motion to dismiss be **GRANTED**.

## I. FACTUAL BACKGROUND

Because this case comes before the Court on a motion to dismiss, the Court must accept as true all material allegations in the complaint and must also construe the complaint, and all reasonable inferences drawn therefrom, in the light most favorable to Plaintiff. *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002). The following facts are taken from Plaintiff's SAC. [Doc. No. 25.]

Plaintiff alleges that, on December 20, 2010, he was removed from the general population and placed in ad-seg without a "115" (Rules Violation Report) or a "1030" (Confidential Info.). (SAC at 4, ¶ 1.)[1] On December 30, 2010, Defendants Janda and Whitman, as part of the Institution Classification Committee ("ICC"), informed Plaintiff that he would be in ad-seg for 60 days to allow the Investigative Service Unit ("ISU") the chance to come up with some evidence for a "115" or "1030." (*Id.* ¶ 4.)

On or about January 3-7, 2011, Defendant Vitela informed Plaintiff that he had a medical appointment. It was only when Plaintiff was locked in the transport van that Defendant Vitela told Plaintiff that he was actually being taken for an interview with Defendant Nelson. (SAC at 4, ¶ 5.) Plaintiff believed that interviewing with someone from the ISU would have put his life in danger, so he refused to get out of the van, and Defendant Vitela "aggressively threatened to drag Plaintiff out." (*Id.* ¶ 6.) As a result of this incident, on January 17, 2011, Plaintiff filed a 602 inmate grievance. (*Id.* ¶ 9.)

On February 7, 2011, Plaintiff's stay in ad-seg was extended to 90 days. (SAC at 4, ¶ 10.) On February 14, 2011, Plaintiff filed another 602 inmate grievance. (*Id.* ¶ 11.) On March 1, 2011, Defendant Nelson wrote a 128-B Chrono stating that Plaintiff refused to cooperate with various investigators' attempts to interview him, presumably because of the January 2011 incident in the transport van. (*Id.* ¶ 12.) On March 4, 2011, ICC issued a "1140D" (lock up order) for Plaintiff. (SAC at 5, ¶ 13.) On March 17, 2011, the ICC extended Plaintiff's stay in ad-seg for another 90 days. The ICC claimed that Defendant Nelson had a "1030" on Plaintiff, which allowed Plaintiff to be retained in ad-seg. (*Id.* ¶ 15.) Plaintiff requested a copy of the "1030," but was not provided one. (*Id.*) On March 24, 2011, Plaintiff filed a 602 inmate grievance form against ICC and Defendant Nelson for violating Plaintiff's due process rights by not providing him a copy of the "1030" form. (*Id.* ¶ 17.)

///

---

[1] Citations to the pages in the SAC refer to the page numbers assigned by CM/ECF.

Shortly thereafter, Plaintiff alleges, the first incident of retaliation occurred against him. On April 6, 2011, Defendant Vitela escorted Plaintiff to a holding cage. After strip searching Plaintiff and removing Plaintiff from the cage, Defendant Vitela allegedly planted an inmate manufactured weapon in the cage. (SAC at 5, ¶ 20.) Plaintiff alleges that Vitela then made a false "114-D" and "115" report and perjured himself at Plaintiff's trial. (*Id.* ¶ 22.) As a result of this "first incident of retaliation," Plaintiff did not "push the issue" of his 602 complaints, because he feared further retaliation. (*Id.* ¶ 18.) On April 14, 2011, ICC ordered Plaintiff be held in ad-seg pending the outcome of the 115 for the contraband weapon. (*Id.* ¶ 26.) A jury found Plaintiff not guilty of the charges of possession of an inmate manufactured weapon on April 12, 2012, a year later. (SAC at 7-8, ¶ 40.)

Plaintiff claims he suffered emotional and physical injury from fear of further retaliation from all the Defendants. (SAC at 8, ¶ 14.) This led Plaintiff to sleep 15-20 hours a day to avoid those fears. Plaintiff, however, had a lot of nightmares, which caused severe neck and back pain, high blood pressure, and deep black circles around his eyes. Plaintiff claims the effects of the fear and nightmares are "felt and seen to this day." (*Id.*) He feared he would lose at his trial for possession of inmate manufactured weapon, get 25 years to life, be labeled a "trouble maker," and be sent to a higher level security facility. Plaintiff alleges that because of the contraband weapon charge, he was subjected to 580 days in ad-seg without due process.

## II. DISCUSSION

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the plaintiff's claims. A claim can be dismissed only if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the complaint." *Swierkiewicz v. Sorema*, 534 U.S. 506, 513 (2002). The issue is not whether the plaintiff will ultimately prevail, but whether he has properly stated a claim upon which relief could be granted. *Jackson v. Carey*, 353 F.3d 750, 755 (9th Cir. 2003). When the plaintiff is appearing *pro se*, the court must construe the pleadings liberally and afford the plaintiff any benefit of the doubt. *Thompson*, 295 F.3d at 895; *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 623 (9th Cir. 1988). This rule of liberal construction is "particularly important" in civil rights cases. *Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992). In giving liberal interpretation to a *pro se* civil rights complaint, however, the court is not permitted to "supply

essential elements of the claim that were not initially pled." *Ivey v. Bd. of Regents of the Univ. of Ala.*, 673 F.2d 266, 268 (9th Cir. 1982).

## A.     First Amendment Retaliation Claim

Plaintiff alleges that Defendant Vitela planted an "inmate manufactured weapon" in Plaintiff's cage in retaliation for the inmate grievances Plaintiff filed. (SAC at 5, ¶ 20.) The alleged retaliation caused Plaintiff to fear further retaliation and kept him from pursuing his claims. (*Id.* ¶ 18) Defendants argue that Plaintiff fails to state a retaliation claim against Defendants Nelson, Janda, Duarte, or Carpio.[2] (MTD at 8.)

Allegations of retaliation against a prisoner's First Amendment rights to speech or to petition the government may support a § 1983 claim. *Rizzo v. Dawson*, 778 F.2d 527, 532 (9th Cir. 1985); *see also Valandingham v. Bojorquez*, 866 F.2d 1135 (9th Cir. 1989); *Pratt v. Rowland*, 65 F.3d 802, 807 (9th Cir. 1995). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005). An allegation of retaliation against a prisoner's First Amendment right to file a prison grievance is sufficient to support a claim under § 1983. *Bruce v. Ylst*, 351 F.3d 1283, 1288 (9th Cir. 2003). Adverse action is action that "would chill a person of ordinary firmness" from engaging in that activity. *Pinard v. Clatskanie School Dist.*, 467 F.3d 755, 770 (9th Cir. 2006); *White v. Lee*, 227 F.3d 1214, 1228 (9th Cir. 2000).

Here, Defendant Vitela is the person who allegedly planted the inmate manufactured weapon in the holding cage, and Defendants do not move to dismiss him from this claim. Plaintiff implicates Defendant Nelson in this retaliation claim, because the incident of retaliation allegedly occurred as a result of a 602 complaint Plaintiff filed against Defendant Nelson. (SAC at 5, ¶ 18.) However, Plaintiff does not allege any direct participation or adverse action on the part of Defendant Nelson. "Liability under [§ ] 1983 arises only upon a showing of personal participation by the defendant." *Taylor v. List*,

---

[2] Defendants do not seek to dismiss the First Amendment retaliation claim against Vitela and Whitman.

880 F.2d 1040, 1045 (9th Cir. 1989) (citations omitted).  To the extent that Plaintiff asserts this claim against Defendant Nelson, because he was Defendant Vitela's supervisor, the claim also fails.  "A supervisor is only liable for the constitutional violations of . . . subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them.  There is no respondeat superior under [§ ] 1983."  *Id.*  Plaintiff fails to allege that Nelson participated in or directed the alleged planting of the contraband weapon or that Nelson knew it would happen and did not prevent it.  Therefore, the SAC does not state a claim against Defendant Nelson for retaliation.

Defendant Janda was part of the ICC committee that reviewed Plaintiff's removal to ad-seg.  Plaintiff also fails to allege personal participation on Janda's part in the alleged retaliation against Plaintiff.  Therefore, the allegations in the SAC do not state a claim against Defendant Janda for retaliation.

Plaintiff claims Defendant Duarte testified in Plaintiff's trial for possession of an inmate manufactured weapon.  (SAC at 7, ¶ 39.)  Defendant Carpio also aided in the alleged retaliation by signing off on the allegedly false "114-D" and "115", approving "contraband watch" of Plaintiff's cell mate, and testifying in support of Defendant Vitela at trial.  (SAC at 6, ¶ 24.)  Plaintiff has not stated a claim for retaliation against Defendants Duarte and Carpio.  Plaintiff's allegations describe Defendants Duarte and Carpio taking actions consistent with the course and scope of their jobs.  *See Barnett v. Centoni*, 31 F.3d 813, 816 (9th Cir. 1994) (plaintiff must establish that retaliatory act does not advance legitimate penological goals, such as preserving institutional order and discipline).  Plaintiff fails to allege that Vitela or Duarte took some adverse action against Plaintiff *because of* Plaintiff's protected conduct.  Therefore, the SAC fails to state a claim against Defendants Vitela and Duarte for retaliation.

Because Plaintiff fails to state a claim for retaliation against Defendants Nelson, Janda, Duarte, or Carpio, this Court **RECOMMENDS** that the motion to dismiss the retaliation claim against these Defendants be **GRANTED**.

**B.     Eighth Amendment Cruel and Unusual Punishment Claim**

Plaintiff alleges that prison officials subjected him to 580 days in ad-seg, which amounted to cruel and unusual punishment, because he was deprived of the "ordinary incidents of prison life."  (SAC at 9, ¶ 5.)  Defendants argue this claim should be dismissed, because Plaintiff has not made any

allegations to show that Plaintiff's conditions of confinement were constitutionally unacceptable.

The Eighth Amendment prohibits the imposition of cruel and unusual punishment and "embodies broad and idealistic concepts of dignity, civilized standards, humanity and decency." *Estelle v. Gamble*, 429 U.S. 97, 102 (1976); *see also Hutto v. Finney*, 437 U.S. 678, 685 (1978); *Spain v. Procunier*, 600 F.2d 189, 200 (9th Cir. 1979). "No static test can exist by which courts determine whether conditions of confinement are cruel and unusual, for the Eighth Amendment must draw its meaning from the evolving standards of decency that mark the progress of a maturing society." *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981).

The Constitution does not require comfortable prisons. *Rhodes*, 452 U.S. at 349, *rev'd on other grounds sub nom.*; *Bell v. Wolfish*, 441 U.S. 520 (1979). Conditions need not be optimal. *Rhodes*, 452 U.S. at 347; *Hoptowit v. Spellman*, 753 F.2d 779, 784 (9th Cir. 1985). They may in fact be restrictive or even harsh without violating the Constitution. *Rhodes*, 452 U.S. at 347. The Court's function is not to oversee the decisions of prison officials and ensure prisons are well-managed, but merely to determine whether a Constitutional violation has occurred and, if so, to fashion an appropriate remedy. *Hoptowit v. Ray*, 682 F.2d 1237, 1246 (9th Cir. 1982) (citations omitted). The Court accords prison administrators "wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Wolfish*, 441 U.S. at 547.

That said, the Eighth Amendment prohibits the unnecessary and wanton infliction of pain. *Whitley v. Albers*, 475 U.S. 312, 319 (1986), as well as deliberate indifference to serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). In order to establish liability, Plaintiff must show that Defendants knew of, and disregarded an excessive risk to his health or safety. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The "deliberate indifference" standard requires more than ordinary lack of care; unless Defendants were both aware of facts from which they could infer that a substantial risk of serious harm exists, and also actually drew that inference, they are not liable. *Id.* at 835, 837. Defendants' failure to alleviate a risk they should have perceived but in fact did not is not an Eighth Amendment violation. *Id.* at 838. Plaintiff must show each Defendant's liability, including showing how each Defendant caused him harm. *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988).

A prisoner can state a § 1983 claim against a prison official under the Eighth Amendment by establishing that the prison official acted with "deliberate indifference" in creating the condition that violates the Eighth Amendment. To the extent that Plaintiff is attempting to plead an Eighth Amendment claim based on placement in ad-seg, there is no constitutional right to be housed in a particular prison or location within a prison. *Olim v. Wakinekona*, 461 U.S. 238, 244-45 (1983). In Exhibit A to the SAC, Plaintiff includes a chart comparing the conditions in the general population versus those in administrative segregation.[3] (SAC at 17-18.) Plaintiff's chart does show that conditions in ad-seg were more restrictive than in the general population. For example, there were no church services in ad-seg, there was no phone access, and prisoners in ad-seg could not participate in vocational classes or college correspondence courses that those in the general population could. These more restrictive conditions, however, do not rise to the standard of "unnecessary and wanton infliction of pain" required to state a claim for an Eighth Amendment violation.

Plaintiff also makes factual allegations involving things that the Defendants said to him. While it is not entirely clear, the Court liberally construes the allegations as intended to support Plaintiff's Eighth Amendment claim. According to the SAC, on or around January 3, 2011, Defendant Vitela told Plaintiff that Plaintiff had a medical appointment. (SAC at 9, ¶ 1.) Once Plaintiff was in the transport van, Vitela informed Plaintiff that Plaintiff was actually going to an interview with ISU Supervisor Nelson. Plaintiff did not want to go to the interview, because he feared being alone with Defendant Nelson. (*Id*. ¶ 3.) Vitela then "aggressively threatened" to drag Plaintiff out of the van. However, it appears from the SAC that Vitela did not carry out his threat, but instead escorted Plaintiff back to his cell. (*Id*. ¶ 4.) The SAC also details an incident with Defendant Whitman, in which Plaintiff disputed the time he would receive in ad-seg for the contraband weapon charge. Plaintiff believed it should only have been seven months, but his 128G indicated it would be ten months. Defendant Whitman allegedly told Plaintiff he would do the full ten months and then some and that "Plaintiff should learn to keep his mouth shut." (SAC at 10, ¶ 14.) A third incident involved Defendant Janda, who was supposed to review a 602 inmate complaint. When Plaintiff asked Janda about the status of the 602, Janda responded that it was still on his desk, but

---

[3] On a motion to dismiss the Court may consider exhibits submitted with the complaint. *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n. 19 (9th Cir. 1990).

Plaintiff would not get it back, and that it was going in the trash. (*Id*. at 11, ¶ 17.)

Generally, allegations of verbal threats and/or verbal harassment alone are insufficient to state an Eighth Amendment claim. *See Farmer*, 511 U.S. at 834. The Ninth Circuit has expressly held that "it trivializes the [E]ighth [A]mendment to believe a threat constitutes a constitutional wrong." *Gaut v. Sunn*, 810 F.2d 923, 925 (9th Cir. 1987); *see also Corrales v. Bennett*, 567 F.3d 554, 564-565 (9th Cir. 2009) (upholding and applying *Gaut* for the principle that mere threats cannot demonstrate constitutional deprivation); *Freeman v. Arpaio*, 125 F.3d 732, 738 (9th Cir. 1997) (abusive language directed at inmate's ethnic background held insufficient to raise constitutional claim); *Rutledge v. Az. Bd. of Regents*, 660 F.2d 1345, 1353 (9th Cir. 1981), *affirmed sub nom*, *Kush v. Rutledge*, 460 U.S. 719 (1983); *Keenan v. Hall*, 83 F.3d 1083, 1092 (9th Cir. 1996), *amended by* 135 F.3d 1318 (9th Cir. 1998) (disrespectful and assaultive comments by prison guard not enough to implicate Eighth Amendment); *Oltarzewski v. Ruggiero*, 830 F.2d 136, 139 (9th Cir. 1987) (directing vulgar language at prisoner does not state constitutional claim). The "verbal threats" detailed in the SAC are insufficient to state a claim for an Eighth Amendment violation.

As discussed above, Plaintiff has failed to set forth a claim for Eighth Amendment violations due to his confinement in ad-seg or verbal threats made against him. This Court **RECOMMENDS** that the motion to dismiss the Eighth Amendment cruel and unusual punishment claim be **GRANTED**.

C.   **Fourteenth Amendment Equal Protection and Due Process Claim**

Plaintiff alleges a Fourteenth Amendment Equal Protection and Due Process violation by Defendants relating to a number of prisoner complaints he filed and to his time in ad-seg. Plaintiff claims his prisoner complaints were not being processed in a timely matter or taken seriously. In addition, Plaintiff claims that the 580 days he spent in ad-seg caused an "atypical and significant hardship" (SAC at 14, ¶ 11**)**, and he did not receive due process when he was continually retained in ad-seg for a total of 580 days. Defendants argue that Plaintiff has not stated a due process claim, because his placement in ad-seg did not violate a liberty interest. Further, Defendants argue that Plaintiff has not stated an equal protection claim, because Plaintiff has not made any allegations that he was targeted for inappropriate treatment based on his membership in any protected class or race. (MTD at 18.)

///

### 1. Equal Protection

To state a claim for violation of the Equal Protection clause, "a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998). The Equal Protection Clause of the Fourteenth Amendment may be invoked only where similarly situated individuals are being intentionally treated differently without a rational relationship to a legitimate state purpose. *Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 601-02 (2008); *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 592 (9th Cir. 2008); *N. Pacifica LLC v. City of Pacifica*, 526 F.3d 478, 486 (9th Cir. 2008). Here, Plaintiff does not allege that he was part of a protected class or that he was intentionally treated differently from other inmates because of this protected class. Nor has Plaintiff alleged that Defendants' conduct lacked any rational basis. *See Rodriguez v. Cook*, 169 F.3d 1176, 1179–81 (9th Cir. 1999). Moreover, Plaintiff has failed to allege facts showing discriminatory motive on the part of Defendants. Accordingly, the Court finds that Plaintiff fails to state a cognizable claim for relief under § 1983 based upon Equal Protection.

### 2. Procedural Due Process

The Fourteenth Amendment provides that: "[n]o state shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. "The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property." *Bd of Regents v. Roth*, 408 U.S. 564, 569 (1972). To state a procedural due process claim, Plaintiff must allege: "(1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; [and] (3) lack of process." *Wright v. Riveland*, 219 F.3d 905, 913 (9th Cir. 2000).

#### a. Inmate Grievances

As it relates to the various inmate grievances Plaintiff filed, there is no federal constitutional right to a prison administrative appeal or grievance system for California inmates. *See Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003); *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988); *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996). The denial of an inmate appeal is not so severe a change in condition as to implicate the Due Process Clause itself and the State of California has not

created a protected interest in an administrative appeal system in its prisons. California's regulations grant prisoners a purely procedural right: the right to have a prison appeal. *See* Cal. Code Regs. tit 15, §§ 3084 *et seq*. A provision that merely provides procedural requirements, even if mandatory, cannot form the basis of a constitutionally cognizable liberty interest. *See Smith v. Noonan*, 992 F.2d 987, 989 (9th Cir. 1993); *see also Antonelli*, 81 F.3d at 1430 (prison grievance procedure is procedural right that does not give rise to protected liberty interest requiring procedural protections of Due Process Clause). Here, Plaintiff had no federal constitutional right to a properly functioning appeal system where the initial adjudication process satisfies due process. Therefore, an incorrect decision on an administrative appeal or failure to process the appeal in a particular way did not amount to a violation of his right to due process. Accordingly, the Court finds that Plaintiff fails to state a due process claim, as it relates to his inmate grievances.

### b.     Plaintiff's 580-day Confinement in Ad-seg

Plainitff's 580-day confinement in ad-seg, however, may implicate a liberty interest and due process requirements. A prisoner facing disciplinary measures and whose liberty interest is threatened is entitled to advance written notice of the charges, a hearing, written findings and reasons for the disciplinary action taken and, when it presents no security risk, to call witnesses and present evidence in his defense. *Wolff v. McDonnell*, 418 U.S. 539, 563-566 (1974). To state a claim for the deprivation of procedural due process, Plaintiff must allege a Defendant deprived him of a liberty interest, which may arise independently under the due process clause or as freedom from state deprivation or restraint imposing "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Connor*, 515 U.S. 472, 483-84 (1995). Such a hardship exists when conditions of confinement do not mirror those in other housing units, but rather "works a major disruption" in the prisoner's environment. *Id.* at 486-87. Ordinarily, placement in disciplinary segregation works no such disruption. *Id.* at 486. For such placement to be "atypical and significant," there must be some extraordinary circumstance or combination of circumstances that make the confinement markedly more severe than non-punitive housing. *Serrano v. Francis*, 345 F.3d 1071, 1078-79 (9th Cir. 2003) (placing handicapped prisoner in disciplinary housing not equipped to accommodate his needs and holding him there for nearly two months was an "atypical and significant hardship" compared to "the ordinary

incidents of prison life").

In *Sandin*, the U.S. Supreme Court held that a prisoner who was placed in disciplinary segregation in a prison's segregated housing unit ("SHU") for 30 days had no cognizable procedural due process claim because he had no liberty interest in being free from such confinement. 515 U.S. at 487. However, the *Sandin* decision leaves open the question of whether, under different conditions of confinement from those found in *Sandin*, an inmate could have a liberty interest in freedom from confinement in administrative segregation or SHU. The Ninth Circuit has held that "[t]here is no single standard for determining whether a prison hardship is atypical and significant," and that question generally requires "case by case, fact by fact consideration" of the conditions or combination of conditions or factors at issue. *Ramirez v. Galaza*, 334 F.3d 850, 861 (9th Cir. 2003) (internal quotation marks and citation omitted). That court has identified "guideposts" that "provide a helpful framework: 1) whether the challenged condition mirrored those conditions imposed upon inmates in administrative segregation and protective custody, and thus comported with the prison's discretionary authority; 2) the duration of the condition, and the degree of restraint imposed; and 3) whether the state's action will invariably affect the duration of the prisoner's sentence." *Id.* (internal quotation marks and citation omitted).

Here, Plaintiff has alleged that the conditions in ad-seg caused "atypical and significant hardship" and "an enormous disruption in his environment when compared to those shared by prisoners in the general population." (SAC at 14, ¶ 11.) Exhibit A to the SAC is a chart, laying out the difference between the general population and administrative segregation. Plaintiff alleges that in ad-seg, he was kept in his cell 23 hours a day, seven days a week, with extreme limited human contact, and only two hours of yard time, three times a week in an oversized dog cage; he was only allowed to shower three times a week; he was not allowed tennis shoes, only "karate shoes," which hurt his feet, knees and back; he was only allowed non-contact visits behind a glass and while shackled; he was handcuffed to a chain around his waist with shackles on his ankles every time he exited his cell; and he was barely able to move around freely in the 56' perimeter cage. (SAC Exh. A.)

The Court recognizes that Plaintiff is not constitutionally entitled to avoid all of the conditions of which he complains. He is, however, constitutionally entitled to some things, such as adequate heating

and food. *Keenan*, 83 F.3d at 1091. Further, extreme social isolation and deprivation of outdoor exercise may violate the constitutional rights of inmates confined to continuous and long-term segregation. *Id.* at 1089-90. In addition, "the length of confinement cannot be ignored in deciding whether the confinement meets constitutional standards. A filthy, overcrowded cell and a diet of 'grue' might be tolerable for a few days and intolerably cruel for weeks or months." *Keenan*, 83 F.3d at 1089 (quoting *Hutto v. Finney*, 437 U.S. 678, 686 (1978)); *Ramirez*, 334 F.3d at 861.

The plaintiff in *Jackson v. Carey*, 353 F.3d 750 (9th Cir. 2003) spent five months in the SHU. Jackson's § 1983 complaint alleged that, while in the SHU, he lost legal materials and some of his personal items were confiscated or damaged; he also alleged that as a result of his placement in SHU, he suffered instability, was denied medical treatment, suffered discrimination and harassment, and was unable to visit with friends and family. *Id.* His complaint outlined the conditions in the general population, administrative segregation, and in the SHU, and how they differed from one another. *Id.* at 755-56. The Ninth Circuit found that Jackson had sufficiently stated a claim for relief, noting, "The present inquiry is better suited for summary judgment. After discovery, the district court may determine whether the transfer and confinement in Corcoran-SHU . . . constitutes an 'atypical and significant hardship,' thus infringing upon a protected liberty interest under *Sandin*." *Id.* at 757 (citing *Duffy v. Riveland*, 98 F.3d 447, 457 (9th Cir. 1996). In this case, the 580 days Plaintiff spent in ad-seg far exceed the 30 days in *Sandin* and the five months Jackson spent in the SHU. This Plaintiff and Jackson both complain of similar conditions of extreme social isolation and confinement. Taking the facts in the light most favorable to Plaintiff, the SAC sufficiently alleges that the 580 days spent in the SHU did work "a major disruption in [Plaintiff's] environment." *Sandin*, 515 U.S. at 486.

The second part of the inquiry is whether Plaintiff has sufficiently alleged that he was denied due process under *Wolff*. Plaintiff alleges that he was kept in ad-seg for 580 days, because of the weapon charge against him. Because the weapon charge was false, Plaintiff argues, he was retained in ad-seg without due process.[4] To the extent that Plaintiff alleges that his placement in ad-seg resulted from false

---

[4] While the SAC is not entirely clear, Plaintiff clarifies this claim in his opposition [doc. no. 33]: "Pltf. never states any due process violations in regard to his placement in Ad-Seg, just his retention, that was illegally doneso, by the planting of a weapon to retaliate against pltf for exercising his 1st Amd right." (Opp'n at 12.)

charges or a falsified disciplinary report, such an allegation is insufficient to state a due process claim. A prisoner does not have a constitutional right to be free from falsified disciplinary reports. *See Hines v. Gomez*, 108 F.3d 265, 268-69 (9th Cir. 1997) ("[T]here are no procedural safeguards protecting a prisoner from false retaliatory accusations."); *Buckley v. Gomez*, 36 F. Supp. 2d 1216, 1222 (S.D. Cal. 1997); *Harper v. Costa*, CIV S-07-2149 LKK DAD P, 2009 WL 1684599, at *2 (E.D. Cal. June 16, 2009); *Williams v. Foote*, 08-2838-CJC (JTL), 2009 WL 1520029, at *7 (C.D. Cal. May 28, 2009). Rather, the Fourteenth Amendment provides that a prisoner has a right not to be deprived of a protected liberty interest without due process of law. Thus, as long as a prisoner receives proper procedural due process, a claim based on the falsity of disciplinary charges, standing alone, does not state a constitutional claim. *See Sprouse v. Babcock*, 870 F.2d 450, 452 (8th Cir. 1989); *Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir. 1986); *Hanrahan v. Lane*, 747 F.2d 1137, 1140-41 (7th Cir. 1984).

Under the Due Process Clause, a prisoner is entitled to certain procedural protections when he is charged with a disciplinary violation. *Wolff*, 418 U.S. at 564-71. These protections include a written notice at least twenty-four hours before the disciplinary hearing, an opportunity to call witnesses and present documentary evidence, and a written statement by the fact-finder as to the evidence relied upon and the reasons for the disciplinary action taken. *Id.* Here, Plaintiff was accused of possessing an inmate manufactured weapon. It appears from the SAC that he then received all of the due process he was entitled and was found not guilty. (SAC at 7-8, ¶ 40.) Plaintiff does not allege that he was denied notice of the charges against him, or the opportunity to call witnesses and present evidence at the trial. As such, the Court finds Plaintiff fails to state a Fourteenth Amendment due process claim, as it relates to his 580 days in ad-seg.

**D.     Leave to Amend**

"Under Ninth Circuit case law, district courts are only required to grant leave to amend if a complaint can possibly be saved. Courts are not required to grant leave to amend if a complaint lacks merit entirely." *Lopez v. Smith*, 203 F.3d 1122, 1129 (9th Cir. 2000). *See also, Smith v. Pac. Prop. & Dev. Corp.*, 358 F.3d 1097, 1106 (9th Cir. 2004), citing *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995) ("a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not be cured by the allegation of other facts."). "Liberality in

granting a plaintiff leave to amend 'is subject to the qualification that the amendment not cause undue prejudice to the defendant, is not sought in bad faith, and is not futile.'" *Thornton v. McClatchy Newspapers, Inc.*, 261 F.3d 789, 799 (9th Cir. 2001), quoting *Bowles v. Reade*, 198 F.3d 752, 757 (9th Cir. 1999). "[A] district court retains its discretion over the terms of a dismissal for failure to state a claim, including whether to make the dismissal with or without leave to amend." *Lopez v. Smith*, 203 F.3d at 1124. "The district court's discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint." *Metzler Inv. GMBH v. Corinthian Coll., Inc.*, 540 F.3d 1049, 1072 (9th Cir. 2008), quoting *In re Read–Rite Corp.*, 335 F.3d 843, 845 (9th Cir. 2003). This case was filed April 16, 2013, this is Plaintiff's Second Amended Complaint, and the second motion to dismiss that Defendants have had to file. Having thoroughly reviewed the allegations in the SAC, the Court finds that further amendment would not cure its defects. Plaintiff would be better served to focus his efforts on proceeding with the remainder of the case. As such, this Court **RECOMMENDS** that leave to amend not be granted.

### III. CONCLUSION

This Court submits this Report and Recommendation to the United States District Judge assigned to this case pursuant to 28 U.S.C. § 636(b)(1). Based on the foregoing, the Court **RECOMMENDS** that Defendants' motion to dismiss portions of the second amended complaint be **GRANTED** as detailed below:

1) The retaliation claim against Defendants Nelson, Janda, Duarte, and Carpio be **DISMISSED**;

2) The Eighth Amendment claim be **DISMISSED** in its entirety;

3) The Fourteenth Amendment claim be **DISMISSED** in its entirety; and,

4) The retaliation claim against Defendants Vitela and Whitman would remain.

The Court **FURTHER RECOMMENDS** that leave to amend not be granted.

No later than **January 22, 2015**, any party to this action may file written objections with the court and serve a copy on all parties. The document should be captioned "Objections to Report and Recommendation." Any reply to the objections shall be filed with the court and served on all parties no later than **February 5, 2015**. The parties are advised that failure to file objections within the specified

time may waive the right to raise those objections on appeal of the Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

**IT IS SO ORDERED.**

DATED: December 23, 2014

                                                      Hon. Nita L. Stormes
U.S. Magistrate Judge
United States District Court