UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES EUSSE, JR.,<br><br>　　　　　　　　　　　Plaintiff,<br><br>v.<br><br>M. VITELA, et al.,<br><br>　　　　　　　　　　　Defendants. | Case No.: 3:13-cv-00916-BEN-NLS<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO COMPEL DISCOVERY**<br><br>(Dkt. No. 57) |

Plaintiff James Eusse, Jr. ("Plaintiff"), a California prisoner proceeding *pro se* and *in forma pauperis*, commenced this civil rights action pursuant to 42 U.S.C. § 1983 on April 16, 2013. (Dkt. No. 1.)  Before the Court is Plaintiff's motion to compel discovery.  He seeks further responses to his Second and Third Requests for Production of Documents.  For the reasons explained below, the Court **GRANTS IN PART** and **DENIES IN PART** Plaintiff's motion. (Dkt. No. 57.)

I.  **RELEVANT BACKGROUND**

　　**A. Summary of Factual Allegations**

Plaintiff's surviving claims allege that Defendants Vitela and Whitman retaliated

against him for exercising his First Amendment rights while he was incarcerated at Centinela State Prison. (Dkt. No. 41 at 9.) According to allegations in Plaintiff's Second Amended Complaint, on April 6, 2011, Defendant Vitela escorted Plaintiff to a holding cage. After strip searching Plaintiff and removing Plaintiff from the cage, Defendant Vitela allegedly planted an inmate manufactured weapon in the cage. (Dkt. No. 25 at 5, ¶ 20.) Plaintiff alleges that Vitela then made a false "114-D" lock-up order and a "115" report, and perjured himself at Plaintiff's trial. (Id. at 6, ¶ 22.) The alleged retaliation caused Plaintiff to fear further retaliation and kept him from pursuing his claims. (Id. at 5, ¶ 18.)

The Second Amended Complaint also details an incident with Defendant Whitman, in which Plaintiff disputed the time he would receive in the segregated housing unit for the contraband weapon charge. (*See* id. at 6, ¶ 29.) Plaintiff believed the time spent should have been only seven months, but his 128G form indicated it would be ten months. (Id. at 6, ¶ 30.) Plaintiff alleges Defendant Whitman was part of the Institutional Classification Committee ("ICC"). (Id. at 6, ¶ 29.) Defendant Whitman allegedly told Plaintiff he "would do the full ten months and then some and that "Plaintiff should learn to keep his mouth shut." (Id. at 7, ¶ 32.) When Plaintiff asked for the 128G forms back, he alleges Defendant Whitman said "No, I'm going to keep them [because] you just caught your 3 friends an extra 2 months 15 days and I'm going to tell them that it's [because] of you that they're getting the extra time." (Id. at 7, ¶ 33.)

### B. Procedural Background To The Parties' Discovery Dispute

On April 20, 2015, Plaintiff served Defendants with his Second Set of Requests for Production of Documents ("RFP Set 2"). Defendants served their initial responses and objections to Plaintiff's RFP Set 2 on May 26, 2015. Plaintiff filed a motion to compel on May 28, 2015, before he received Defendants' responses and objections. (Dkt. No. 46.)

On June 19, 2015, Plaintiff served Defendants his Third Set of Requests for

Production of Documents (RFP Set 3).  Defendants served their responses and objections on July 16, 2015.

On August 4, 2015, the Court denied without prejudice Plaintiff's motion to compel further responses to RFP Set 2 without prejudice because the parties had not yet met and conferred.  (Dkt. No. 54.)  The Court directed the parties to meet and confer, and stated that to the extent the parties reached an impasse regarding their dispute, Plaintiff should file his motion to compel further responses by August 31, 2015.

On August 10, 2015, the parties met and conferred regarding Plaintiff's RFP Sets 2 and 3.  Immediately following the conference, Plaintiff prepared and sent Defendants a letter memorializing the parties' meet and confer discussions.  The letter set out in detail the requests they discussed and Defendants' agreements to resolve the disputes.  (Dkt. No. 57 at 45-46.)  At the conclusion of the letter, Plaintiff asked Defendants' counsel to respond and correct him if Plaintiff was mistaken on any of the issues and resolutions he memorialized in the letter.  (Id.)  According to Plaintiff, Defendants' counsel never corrected Plaintiff on any potential misunderstandings regarding the parties' agreements.  (Dkt. No. 57 at 5.)

On September 9, 2015, Defendants served Plaintiff with their supplemental responses to Plaintiff's RFP Sets 2 and 3.  Defendants then made their supplemental production in response to RFP Set 3 on September 30, 2015.

On October 14, 2015, Plaintiff filed the present motion to compel further responses.[1]  Plaintiff seeks to compel further responses to RFP Set Two Numbers 1 and 2, and RFP Set Three Numbers 1 through 5 on grounds that Defendants' responses and

---

[1] The parties stipulated to allow additional time for Defendants to serve supplemental responses and production past the motion filing date, which appears to be why the motion to compel was filed after the Court's previously set deadline.  The parties did not seek to extend the discovery dispute motion filing deadline, as is required by the undersigned's Chambers Rules.  The Court nonetheless exercises its discretion to address the merits of the dispute.  The parties are cautioned that any future belated requests for determinations on discovery disputes may be summarily denied if not timely filed.

supplemental responses are deficient. Defendants filed their response in opposition on October 29, 2015, and the Court thereafter took the matter under submission. (Dkt. No. 59.)

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 26(b)(1) sets forth the discovery scope in general as follows:

> Parties may obtain discovery regarding any nonprivileged information that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1). The party seeking to compel discovery has the burden of establishing that his request satisfies the relevancy requirements of Rule 26. *Bryant v. Ochoa*, 2009 U.S. Dist. LEXIS 42339, 2009 WL 1390794, at *1 (S.D. Cal. May 14, 2009). Once the party seeking discovery has established that his request meets this relevancy requirement, "the party opposing discovery has the burden of showing that the discovery should be prohibited, and the burden of clarifying, explaining or supporting its objections." *Id*.

## III. DISCUSSION

### A. The Parties' Meet and Confer Agreements

At the outset, the Court notes its concerns that Defendants, through their counsel, agreed to supplement their responses in many respects during the parties' meet and confer discussions, and yet they did not do so. Plaintiff's letter memorializing the parties' meet and confer discussions contains specific descriptions of the parties' agreed upon resolutions to the disputes. (Dkt. No. 57 at 45-46.) Plaintiff set forth each of the disputed discovery requests, as well as his understanding of the specific ways in which

1 | Defendants agreed to amend or supplement their responses. (Id.)

2 | Plaintiff states that Defendants' counsel did not correct any of the Plaintiff's statements in the letter. (Dkt. No. 57 at 5.) Defendants do not dispute this in their opposition to his motion. (*See* Dkt No. 59, *passim*.) Defendants also do not dispute Plaintiff's description of their agreed upon resolutions to the discovery disputes in their opposition. (Id., *passim*.)

Yet despite the parties' apparent agreements, Defendants either did not search for or did not produce certain documents to which they agreed, thus necessitating the present discovery motion.[2] Consequently, the Court reminds Defendants and their counsel of their responsibility to engage in meaningful meet and confer efforts to resolve these disputes.

"The obvious purpose of the Court's meet and confer requirement is to ensure the parties engage in a good faith, meaningful dialogue … in [an] effort to first resolve the particular disputes without the need for judicial intervention." *Richardson v. Fluor Corp.*, 2014 U.S. Dist. LEXIS 15131, *18 (N.D. Cal. Feb. 5, 2014). This process, when successful, "obviates the need for unnecessary motion practice, which, in turn, conserves both the Court's and the parties' resources." *Id.*; *see also Raifman v. Wachovia Sec.*, 2013 U.S. Dist. LEXIS 33388, *4 (N.D. Cal. Mar. 11, 2013) ("'The purpose of the [meet and confer] requirement is to . . . resolve disputes which need not involve the Court, and avoid unnecessary litigation, thus saving the parties', the Court's, and the taxpayers' limited time, money, and resources.'") (citation omitted). Furthermore, "to serve its purpose, parties must 'treat the informal negotiation process as a substitute for, and not simply a formal prerequisite to, judicial review of discovery disputes.'" *U-Haul Co. of Nev., Inc. v. Gregory J. Kamer, Ltd.*, 2013 U.S. Dist. LEXIS 132795, *4-5 (D. Nev. Sept.

---

[2] The Court discusses each of the parties' particular agreements, and what Defendants ended up producing (or not) despite those agreements, in the sections below.

17, 2013) (citation omitted). Because the parties' meet and confer efforts were not completely successful, the Court turns to the substance of the parties' dispute.

### B. Plaintiff's RFP Set Two, Numbers 1 and 2

Plaintiff's RFP Set Two, Numbers 1 and 2 seek Defendant Vitela's and Defendant Whitman's staff records, including disciplinary files, and complaints made by civilians, state/federal employees and inmates. (*See* Dkt. No. 57 at 20-21.) Defendants initially asserted only objections, including objections based on official information grounds with a supporting privilege log and declaration, and refused to produce documents. (Dkt. No. 57 at 24, 25.)

According to Plaintiff's letter memorializing the parties' meet and confer discussions, Defendants' counsel stated he would amend the responses to show that the Defendants do not have any disciplinary actions on file regarding similar matters to Plaintiff's complaint or any complaints made by civilians, state/federal employees and inmates. (Dkt. No. 57 at 45). Defendants then supplemented their responses by producing a "Declaration of No Records." The declaration is dated December 9, 2013, and states the Department of Corrections at Calipatria State Prison "does not have any disciplinary records described in the Civil Case [and cites this case name and case number]" for Defendants Whitman and Vitela. (Dkt. No. 57 at 18.)

Plaintiff contends Defendants' supplemental responses are inadequate and incomplete because the declaration is two years old, and because Defendants did not respond to Plaintiff's request to the extent it sought all complaints against the Defendants that were made by civilians, state and federal employees and inmates. (Dkt. No. 57 at 5.)

Defendants contend their responses are adequate because "there were no disciplinary records concerning Defendants Vitela and Whitman as of December 9, 2013" and any records that may exist after that are not relevant. (Dkt. No. 59 at 4.) They also contend that, in any event, the documents are protected by the official information privilege. (Id.)

Having reviewed the papers submitted, including a copy of the declaration of no records, the Court finds that Defendants' responses were deficient and so further supplemental responses are warranted. Other disciplinary records and substantiated complaints about conduct similar to that alleged in the complaint are relevant and may lead to the discovery of admissible evidence that could bear on Plaintiff's claims. *See e.g., Linares v. Mahunik,* 2008 U.S. Dist. LEXIS 52206, at *7-10 (N.D.N.Y. July 7, 2008) (directing further discovery responses be provided regarding grievances and complaints of retaliation in support of plaintiff's First Amendment violation allegations; the information was discoverable on issues of defendant's credibility and potential impeachment, and supervisory notice (citing caselaw)); *see also e.g., Garcia v. Cluck,* 2013 U.S. Dist. LEXIS 172850, at *6-7 (S.D. Cal. Dec. 6, 2013) (finding that complaints by inmates about conduct similar to the plaintiff's allegations of retaliation are relevant, and directing production of same).

Contrary to the parties' meet and confer agreement, the declaration appears to only discuss disciplinary actions on file regarding *this* case, and not similar matters to Plaintiff's complaint. (Dkt. No. 57 at 18.) Also contrary to the parties' meet and confer agreement, the declaration does not state it does not have on file records for similar complaints made by civilians, state/federal employees and inmates. (Id.) Additionally, because the declaration was executed two years ago it appears the search was not conducted for the records that were requested.

Therefore, unless Defendants' privilege objection should be sustained, Defendants should either produce a declaration showing these records do not exist or produce responsive documents if they do exist. The Court thus turns to whether Defendants' objections based on the official information privilege should be sustained.

In section 1983 cases, federal law, not state law, applies to resolve the question of privileges. *See Kerr v. U.S. Dist. Court for the N. Dist. of Cal.*, 511 F.2d 192, 197 (9th Cir. 1975), *aff'd* 426 U.S. 394 (1976); *Bryant v. Armstrong,* 285 F.R.D. 596, 604 (S.D.

7

Cal. 2012). Federal common law recognizes a qualified privilege for official information. *See Kerr*, 511 F.2d, at 197-98. To determine whether the official information privilege applies, the court must balance the interests of the party seeking discovery and the interests of the government entity asserting the privilege. *Soto v. City of Concord*, 162 F.R.D. 603, 613 (N.D. Cal. 1995). However, in the context of civil rights action, "this balancing approach is moderately 'pre-weight[ed] in favor of disclosure.'" *Armstrong*, 285 F.R.D. at 596 (*quoting Kelly v. City of San Jose*, 114 F.R.D. 653, 661 (N.D. Cal. 1987)).

To trigger the Court's balancing of interests, the party opposing disclosure must make a "substantial threshold showing." *Soto*, 162 F.R.D. at 613 (*quoting Kelly*, 114 F.R.D. at 669). The party opposing disclosure "must submit a declaration or affidavit from a responsible official with personal knowledge of the matters to be attested to in the affidavit." *Id*; *see also Stevenson v. Blake*, 2012 U.S. Dist. LEXIS 113139, 2012 WL 3282892, at *2 (S.D. Cal. Aug. 10, 2012). The declaration must include: "(1) an affirmation that the agency has maintained the confidentiality of the documents at issue; (2) a statement that the official has personally reviewed the documents; (3) a specific identification of the governmental or privacy interests that would be compromised by production; (4) a description of how disclosure subject to a carefully crafted protective order would create a substantial risk of harm to these interests; and (5) a projection of how much harm would be done to these interests if disclosure were made." *Id., citing Kelly*, 114 F.R.D. at 670. If the objecting party does not meet the requirements for invoking the privilege, a court will overrule the privilege objection and order full disclosure. *Bryant,* 285 F.R.D. at 605 (citing cases).

Here, although Defendants provided a declaration in support of their privilege objection, the declaration does not meet the procedural requirements to make a threshold showing that the privilege applies. The declaration does not contain a statement that the official personally reviewed the documents being requested. (Dkt. No. 57 at 33-34.) It

1 also does not explain why a well-crafted protective order would not be able to protect the
2 asserted interests.  (Id.)  Rather, "the declaration is general enough that it could
3 presumably be submitted, with minor modifications, in any prisoner civil rights case in
4 which the prisoner seeks access to internal investigation documents."  *Stevenson*, 2012
5 US Dist. Lexis 113139, 2012 WL 3282892, at *2.  Defendants' privilege objection is
6 therefore overruled.

7      Accordingly, Plaintiff's request to compel further responses to RFP Set Two,
8 Numbers 1 and 2 is **GRANTED**.  Defendants must produce a declaration of no records
9 that attests they searched for and did not find on file for Defendants Vitela and Whitman
10 any disciplinary records regarding similar complaints to those made by Plaintiff, and any
11 substantiated similar complaints made by civilians, state and federal employees and
12 inmates.  Alternatively, if such documents are found they must be produced.  The Court
13 is mindful of the potential privacy concerns of those who made the complaints in
14 question, and therefore the names and identifying information of the individuals who
15 made the complaints, as well as other officers who were not involved in the incident, may
16 be redacted.  *See Lamon v. Adams*, 2010 WL 4513405 at *3-4 (E.D. Cal. Nov. 2, 2010)
17 (ordering redaction of inmate names before production).

18     **C. Plaintiff's RFP Set Three**
19        **i.  RFP Set Three, Numbers 1 & 2**

20    This requests seeks the job title, job description, days off and duties of Defendants
21 Vitela and Whitman from the period of December 20, 2010 through December 20, 2013.
22    According to Plaintiff's letter memorializing the parties' meet and confer
23 discussions, Defendants' counsel stated he would produce the signed and dated Calipatria
24 State Prison ("CSP") Duty Statements for Defendants Vitela and Whitman.  Defendants
25 then produced job descriptions for the positions of a correctional officer and of a captain,
26 which Defendants state were the positions held by Defendants Vitela and Whitman.
27 Defendants also produced a number of other job description and duty documents.

Contrary to the parties' meet and confer agreement, the CSP Duty Statements are not signed and dated by the Defendants, and many of the description and duty documents indicate they are dated 2014 and 2015.

Plaintiff argues the job descriptions that were produced are inadequate because they are dated years after the alleged incidents in this case occurred, and thus the job duties likely changed. He contends he needs this information to establish Defendants' job descriptions and job duties at the time they committed the alleged acts against him. (Dkt. No. 57 at 6.)

Having reviewed the parties' positions as well as the documents produced by Defendants, the Court finds Defendants must further supplement their production. The Court has reviewed the job descriptions and duties Defendants produced, and Plaintiff is correct that many of them are dated as late as 2014 and 2015, which is years after the alleged incidents occurred. There is no indication that these documents contain the same descriptions and duties as those during the time period when the alleged incidents occurred.

Accordingly, the Court **GRANTS** Plaintiff's request to compel further responses to RFP Set Three, Numbers 1 and 2. Defendants must produce, to the extent they exist, the job descriptions and duties documents that applied to Defendants for the time period that the acts committed against Plaintiff occurred, including Defendant Vitela's and Whitman's signed and dated CSP Duty Statements.

### ii.  RFP Set Three, Number 3

Although Plaintiff's motion is unclear, it appears he contends further production in response to this request is needed. Defendants addressed this request in their opposition. Accordingly, the Court discusses it in turn. This request seeks documents showing the title, job description, regular days off, and duties of all staff members that were present in A – Yard 5 Block, on Apr. 6, 2011 during the hours of 6:00 a.m. – 3:00 p.m.

According to Plaintiff's letter memorializing the parties' meet and confer

discussions, Defendants agreed to produce the signed and dated CSP duty statements for all staff members on duty that day. (Dkt. No. 57 at 46.) Defendants searched for the FLSA sheets for Yard A for April 6, 2011, which they stated would indicate who was on duty, but those records no longer exist because water damage occurred in the storage area where they were kept. Defendants produced a declaration of no records regarding the FLSA duty sheets. (Dkt. No. 57 at 51.) Thus, presumably, Defendants were unable to locate the CSP duty statements for those staff members because they no longer have the FLSA sheets. Plaintiff appears to argue the supplemental response and production are inadequate because Defendants did not produce the documents due to the water damage.

The Court finds no further responses to this request are required. Federal Rule of Civil Procedure 34(a)(1) limits requests for production to items within "the responding party's possession, custody, or control." Defendants do not have the FLSA sheets within their possession, custody, or control because they no longer exist due to water damage. This is confirmed by the declaration dated September 14, 2015, which expressly states that Calipatria State Prison "does not have … FLSAs showing staff on duty in Building A5 on A Yard on April 6, 2011." (Dkt. No. 57 at 51.) Defendants' counsel further explained in his letter to Plaintiff that the documents no longer exist due to the water damage. (Dkt. No. 57 at 50.)  Accordingly, the Court **DENIES** Plaintiff's request to compel further responses to RFP Set Three, Number 3.

### iii.  RFP Set Three, Number 4

This request seeks information about the title, job description, days off and duties of all ICC members that took part in Plaintiff's ICC hearings during the period of Dec. 20, 2010 to December 20, 2013. According to Plaintiff's letter memorializing the parties' meet and confer discussions, Defendants agreed to produce the signed and dated CSP duty statements for all ICC members who took part in Plaintiff's ICC hearings.

In support of his motion to compel, Plaintiff contends Defendants failed to supplement their response at all in this regard. Defendants contend they produced the

relevant responsive information for Defendant Whitman, as well as confirmed that the FLSA duty sheets for April 6, 2011, no longer exist due to water damage. Defendants also produced documents showing the job duties of the ICC members from 2010-2014.

The Court finds Defendants need not provide further supplemental responses to this request. Plaintiff's claims are not against any ICC members other than Defendant Whitman. As already discussed above, Defendants must produce the signed and dated CSP duty statement for Defendant Whitman, whom Plaintiff alleges was an ICC member. (*See supra*, § III.C.i.) Moreover, Defendants have already produced documents showing the job duties of the members of the ICC from 2010-2014, and Plaintiff has not sufficiently demonstrated the relevance and need for the signed and dated CSP duty statements of the other ICC members. Accordingly, the Court **DENIES** Plaintiff's motion to compel a further response to RFP Set Three, Number 4.

### iv.  RFP Set Three, Number 5

This request seeks documents showing the name, title, job description, days off and duties of Defendant Vitela's immediate supervisor on the date of April 6, 2011. Plaintiff's motion is unclear regarding whether he moves to compel a further response to this request, but Defendants addressed it in their opposition and so the Court addresses it here.

When the parties met and conferred, Defendants stated they would search for the log book for building A5 on April 6, 2011. Defendants searched for and provided the responsive log book documents to defense counsel for production. Defense counsel, however, inadvertently left the documents out of the supplemental production. Defendants have since produced the documents, which confirms Defendants' prior statements that, to the best of their recollection, Seargent R. Diaz was their immediate supervisor and was on duty that day. (Dkt. No. 59 at 10; Dkt. No. 59-1 at 41-43.) Accordingly, the Court **DENIES AS MOOT** Plaintiff's request to compel a further response to RFP Set Three Number 5.

## IV. CONCLUSION

For the forgoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Plaintiff's request to compel further responses, and now **ORDERS**:

A. Plaintiff's request for further responses to RFP Set Two, Numbers 1 and 2 is **GRANTED**. Defendants must provide supplemental responses to these requests in accordance with the instructions contained in this order by **December 31, 2015**.

B. Plaintiff's request for further responses to RFP Set Three, Numbers 1 and 2 is **GRANTED**. Defendants must provide supplemental responses to these requests in accordance with the instructions contained in this order by **December 31, 2015**.

C. Plaintiff's request for further responses to RFP Set Three, Numbers 3 and 4 is **DENIED**.

D. Plaintiff's request for further responses to RFP Set Three, Number 5 is **DENIED AS MOOT.**

**IT IS SO ORDERED.**

Dated: December 14, 2015

Hon. Nita L. Stormes
United States Magistrate Judge